UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEVEN LEONEL ARIAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIVERSAL MUSIC GROUP, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No. 21-cv-02551 (APM) |

## MEMORANDUM OPINION AND ORDER

**I.**

Plaintiff Steven Leonel Arias, also known as "2dirtyy," is a music producer and composer. Since 2017, Plaintiff has created musical works both individually and in collaboration with other musical artists, including Malik Lynch, also known as "Mak Sauce." Lynch is signed to Def Jam Recordings, which is owned by Defendant Universal Music Group, Inc. ("UMG"). Plaintiff does not allege that he is signed to any recording group. This case arises from an effort at musical collaboration between Plaintiff and Lynch. On May 20, 2019, Plaintiff created a "musical beat" entitled *Suger*, which Lynch requested to use in his own composition. Plaintiff "acquiesced" to Lynch's request, and the resulting composition, *Good Morning*, was released on June 23, 2019.

Later that year, in December 2019, Plaintiff received a contract from Def Jam Recordings for his signature. The contract designated Plaintiff as "the publisher, track engineer, and the mix engineer for the 'Good Morning' song project." The contract also provided that Plaintiff would receive $250 from Def Jam Recordings in return for his contribution to *Good Morning*. Plaintiff signed the documents the day he received them, at age 17.

A second work incorporating *Suger* entitled *Good Morning Remix* was released on May 8, 2020, and featured on Lynch's album. That day, Plaintiff contacted the UMG Licensing and Copyright Department to "inquire[] about the publishing rights and song splits associated with the 'Good Morning' and 'Good Morning Remix' records" and requested both "an accurate accounting for royalties payments" and "a full audit." UMG failed to provide "a cogent answer to [Plaintiff's] accounting inquiry for months" and, eventually, Plaintiff "wished to disaffirm his contract with [UMG]." Plaintiff applied to register the copyright for *Suger*, and the United States Copyright and Trademark Office "received" his application on June 18, 2021. Plaintiff subsequently filed this suit.

Plaintiff asserts claims of direct, contributory, and vicarious copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501. Am. Compl., ECF No. 16, ¶¶ 45–46. Plaintiff brings all infringement claims against five music industry Defendants: (1) UMG; (2) Universal Music Group Publishing ("UMG Publishing"), which is part of UMG; (3) Vydia, Inc. ("Vydia"); (4) Sony Music Publishing; and (5) Roman Alexander Publishing, Inc. ("Roman Alexander").[1] *Id.* ¶¶ 3–7. Before the court are two motions to dismiss, the first filed jointly by Defendants UMG, UMG Publishing, and Sony Music Publishing, and the second filed by Defendant Vydia. Defs.' Mot. to Dismiss, ECF No. 26 [hereinafter UMG & Sony Mot.]; Def.'s Mot. to Dismiss, ECF No. 28 [hereinafter Vydia Mot.].

As discussed below, Plaintiff has failed to establish personal jurisdiction with respect to Defendant Vydia, and Defendants UMG Publishing and Sony Music Publishing are not separate legal entities subject to suit. Furthermore, Plaintiff has not stated plausible claims for direct,

---

[1] Because Defendant Roman Alexander has not moved to dismiss Plaintiff's complaint, this Memorandum Opinion does not address Plaintiff's claims against Roman Alexander.

contributory, or vicarious copyright infringement against the remaining Defendant, UMG. For the reasons that follow, both motions to dismiss are granted in full.

## II.

The court first addresses the issue of personal jurisdiction over Defendant Vydia in the District of Columbia. Vydia argues that Plaintiff has failed to establish that this court has personal jurisdiction over Vydia and seeks dismissal of all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] Vydia Mot., Def.'s Statement of P. & A. in Supp. of Mot. to Dismiss, ECF No. 28-1 [hereinafter Vydia Mem.], at 1, 5–7.

"A complaint must contain a 'short and plain statement of the grounds for the court's jurisdiction,'" *Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F. Supp. 3d 1, 5 (D.D.C. 2021) (quoting FED. R. CIV. P. 8(a)), and "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant," *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *Duarte v. Nolan*, 190 F. Supp. 3d 8, 11 (D.D.C. 2016). A plaintiff meets this burden by "alleging specific acts connecting the defendant with the forum." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (cleaned up). Any "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane*, 894 F.2d at 456; *Capel v. Capel*, 272 F. Supp. 3d 33, 38 (D.D.C. 2017). However, a plaintiff cannot "rely on conclusory allegations" and cannot "aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Duarte*, 190 F. Supp. 3d at 11 (internal quotation marks omitted).

---

[2] Because Plaintiff has not opposed Vydia's motion to dismiss and Plaintiff's complaint does not address the issue of personal jurisdiction over Vydia, Am. Compl. ¶¶ 8–9, the court addresses this issue based on Vydia's motion to dismiss.

A plaintiff can establish personal jurisdiction over a defendant by demonstrating either general or specific jurisdiction. *Miley*, 537 F. Supp. 3d at 5–6. General jurisdiction requires that the defendant have "continuous and systematic contacts with the forum state such that the defendant is essentially at home in the forum." *Id.* at 6 (internal quotation marks omitted). Specific jurisdiction requires that the plaintiff's "claim is related to or arises out of the non-resident defendant's contacts with the forum." *Vasquez v. Whole Foods Mkt.*, 302 F. Supp. 3d 36, 46 (D.D.C. 2018).

Based on the parties' allegations, the parties' factual representations, and its own review of the record, the court finds that Plaintiff has not met his burden. Plaintiff characterizes Vydia as "an end-to-end music technology platform that provides record labels and managers with the infrastructure and tools to power their business" and that "offers supply chain, global distribution, analytics, rights management, payments, detailed revenue reporting, and marketing." Am. Compl. ¶ 5. Plaintiff does not, however, state any connection between Vydia and the District of Columbia.

By contrast, Vydia asserts that it is "neither 'at home' in the District of Columbia nor has contacts with the District of Columbia relating to the instant dispute." Vydia Mem. at 1. Plaintiff has made *no* competing factual allegations here and therefore has not met his burden to establish personal jurisdiction over Vydia. *See Crane*, 894 F.2d at 456. Vydia's motion to dismiss for lack of personal jurisdiction is therefore granted.

## III.

The court next addresses Defendants UMG Publishing and Sony Music Publishing's contention that "they are not legal entities and thus cannot be sued." Defs.' Mot., Defs.' Statement of P. & A. in Supp. of Mot. to Dismiss, ECF No. 26-1 [hereinafter UMG & Sony Mem.], at 1. Specifically, Defendants argue that "Universal Music Group Publishing is a registered trade name

4

of various corporate entities" and that "Sony Music Publishing is not an existing legal entity subject to suit." *Id.* at 5. Plaintiff contends that "Sony Music Publishing (US) LLC ('Sony') . . . is an active domestic limited liability company in the State of Delaware" as well as "an active foreign corporation" in New York State, and therefore "Sony is indeed a legal entity in accordance with both Delaware and New York laws and regulations." Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 27 [hereinafter Pl.'s Resp.], at 2–3.[3] Plaintiff does not address the question of whether UMG Publishing is a legal entity. *Id.*

Courts in this District have previously declined to permit suits to proceed against parties that are not "separate legal entit[ies]," a category that includes parties that are merely "trade name[s]" of existing legal entities. *Baylor v. Michell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43, 45, 49 (D.D.C. 2014); *Evans v. Washington Ctr. for Internships & Acad. Seminars*, 587 F. Supp. 2d 148, 152 (D.D.C. 2008) (holding that defendant "cannot be sued because it is merely a trade name and not a legal entity"). That principle applies here. With respect to Defendant UMG Publishing, Plaintiff's allegation that UMG Publishing "is part of . . . [Defendant] Universal Music Group" is consistent with UMG Publishing's contention that it is not a separate legal entity and thus not subject to suit. Am. Compl. ¶ 4; UMG & Sony Mem. at 5. Plaintiff also does not dispute that UMG Publishing is merely a trade name. Pl.'s Resp. at 2–3; Defs.' Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 29 [hereinafter UMG & Sony Reply], at 1.

Similarly, Plaintiff has described Defendant Sony Music Publishing as "part of the Sony Music Group owned by Sony Entertainment," Am. Compl. ¶ 6, and argues that "Sony Music Publishing (US) LLC" is a separate legal entity, Pl.'s Resp. at 2–3. But that is irrelevant because

---

[3] The court uses ECF pagination in all references to this document.

"Sony Music Publishing (US) LLC" is a different entity than "Sony Music Publishing," which is the entity named in the complaint. Am. Compl. ¶ 6; Pl.'s Resp. at 2–3. Plaintiff does not dispute that named defendant Sony Music Publishing is not a separate legal entity. Accordingly, both UMG Publishing and Sony Music Publishing "cannot be sued because [they are] . . . not . . . legal entit[ies]," and they must be dismissed from this suit. *See Evans*, 587 F. Supp. 2d at 152.

**IV.**

That leaves only UMG as a defendant. UMG contends that Plaintiff has failed to state a claim for direct, contributory, or vicarious copyright infringement. UMG & Sony Mem. at 9–12. The court agrees. In addition, although the court already has held that Defendants Vydia, UMG Publishing, and Sony Music Publishing are not subject to suit in this court, the court also finds that Plaintiff has failed to state claims against them.

**A.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davis v. U.S. Dep't of Health & Hum. Servs.*, 968 F. Supp. 2d 176, 180–81 (D.D.C. 2013) (internal quotation marks omitted). "In other words, a plaintiff must put forth factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Graves v. Callahan*, 253 F. Supp. 3d 330, 332 (D.D.C. 2017) (internal quotation marks omitted); *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022). "[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered . . . ." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). In assessing a complaint's sufficiency, the court "must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Graves*, 253 F. Supp. 3d at 332 (internal

quotation marks omitted). A plaintiff must still, however, meet the minimum standard of "present[ing] a claim on which the Court can grant relief," and the court "need not accept as true a legal conclusion couched as a factual allegation, nor inferences that are unsupported by the facts set out in the complaint." *Davis*, 968 F. Supp. 2d at 180–81 (internal quotation marks omitted).

**B.**

*Licensing.* The court begins by assessing the effect of the written contract ("the Agreement") that Plaintiff undisputedly signed governing his participation in the production of *Good Morning*. UMG & Sony Mot., Ex. A, ECF No. 26-2 [hereinafter UMG & Sony Ex. A], at 2–3;[4] Am. Compl. ¶¶ 25, 32, 42 (conceding that Plaintiff "signed" documents to form a "contract with Universal Music Group"[5]); UMG & Sony Mem. at 8 (stating that the Agreement is "a valid and existing contract to which Plaintiff is a party"). The Agreement provided, among other things, that (1) Plaintiff entered into a "producer agreement" to provide "producing services on [Lynch's] one . . . master recording entitled 'Good Morning'"; (2) no "compositions . . . contained in or used in connection with the Master[]"—that is, *Good Morning*—would "violate or infringe upon the rights of any person or entity"; (3) if copyrighted works *were* incorporated into the Master, Plaintiff would obtain "written consent of the applicable copyright proprietors . . . on terms which grant[ed] UMG and its designees the unrestricted right to exploit the Master[]"; (4) the Master itself would "from the inception of creation, constitute [a] 'work[] made for hire' for UMG"; and (5) Plaintiff would receive "good and valuable consideration including in the form of payment in the amount of [$250.00]." UMG & Sony Ex. A at 2.

---

[4] The court uses ECF pagination in all references to this exhibit.
[5] The court accepts as true Plaintiff's representation that the contract was formed "with Universal Music Group" but notes that the contract itself names "Def Jam Recordings, a division of UMG Recordings, Inc." Am. Compl. ¶ 42; UMG & Sony Ex. A at 2.

7

UMG argues that, because *Good Morning* is "a work for hire," UMG owns the copyright in *Good Morning*. UMG & Sony Mem. at 13. Plaintiff does not dispute that he signed a "contract with Universal Music Group," Am. Compl. ¶¶ 25, 32, 42; Pl.'s Resp. at 4–5, which included a "work made for hire" provision, UMG & Sony Ex. A at 2. The term "work made for hire" includes "a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. "In the case of a work made for hire, the employer or other person for whom the work was prepared . . . unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Id.* § 201(b); *see MOB Music Publ'g v. Zanzibar on the Waterfront*, 698 F. Supp. 2d 197, 204 n.3 (D.D.C. 2010) (noting that "[t]he work for hire doctrine is an exception to the general rule in copyright that the author is the original owner of a work"). By signing the Agreement, Plaintiff "expressly agree[d]" that *Good Morning* would "be considered a work made for hire." *See* 17 U.S.C. § 101; UMG & Sony Ex. A at 2 ("The Master(s) (excluding the underlying compositions) shall, from the inception of creation, constitute 'work(s) made for hire' for UMG . . . ."). Because UMG is the party "for whom [*Good Morning*] was prepared," UMG—and not Plaintiff—owns "all of the rights comprised in the copyright" of *Good Morning*, *see* 17 U.S.C. § 201(b), and Plaintiff cannot successfully assert a claim of infringement.

UMG further argues that, to the extent that Plaintiff contends that *Good Morning* or *Good Morning Remix* infringed *Suger*, the Agreement "granted UMG Recordings, Inc. a license to use *Suger*," including "the right to use *Suger* in those masters and to exploit them as it sees fit." UMG & Sony Mem. at 9. A plaintiff who grants a license for "distribut[ion]" of his musical work(s) may not bring copyright claims arising from that distribution. *Staggers v. Real Authentic Sound*,

8

77 F. Supp. 2d 57, 65 (D.D.C. 1999). The Agreement constituted such a license. In the Agreement, Plaintiff affirmed that the use of any works incorporated into *Good Morning* would not infringe his (or anyone else's) rights and, in the alternative, affirmed that no copyrighted works would be used "without the prior written consent of the applicable copyright proprietors . . . on terms which grant[ed] UMG and its designees the unrestricted right to exploit the Master[]." UMG & Sony Ex. A at 2. So, when Plaintiff agreed to incorporate *Suger* into *Good Morning*, he did so subject to these terms. "Plaintiff's grant of the . . . license[]" thus "bars him from asserting that [Defendant UMG] violated his copyright[]." *Staggers*, 77 F. Supp. 2d at 65.

*Infancy.* Plaintiff does not read the Agreement differently than UMG. He argues instead that he is no longer bound by the Agreement because he "wished to disaffirm his contract" on the grounds that he entered into the contract during his infancy and that Defendant UMG acted in "bad faith" in responding to his "accounting inquiries." Am. Compl. ¶ 42. Defendants do not dispute that Plaintiff was a minor when he signed the Agreement or that contracts with minors are voidable under District of Columbia law; they do dispute that Plaintiff actually disaffirmed or may now disaffirm the Agreement. UMG & Sony Mem. at 17–19.

In the District of Columbia, "[c]ontracts with infants are generally voidable not void; and an infant, upon becoming of age, may either affirm or avoid his contract" within "reasonable time." *Gannon v. Manning*, 42 App. D.C. 206, 209, 211–12 (D.C. 1914); D.C. CODE § 46-101 (setting 18 as the age of majority in the District of Columbia). Plaintiff's claim that he has disaffirmed this contract—even viewing the complaint in the light most favorable to him—fails for two related reasons. First, Plaintiff alleges only that he "*wished to* disaffirm his contract"—not that he actually did so. Am. Compl. ¶ 42 (emphasis added). There is no basis to infer that Plaintiff communicated his disaffirmance to Defendant UMG at any time before filing suit. *See Gannon*, 42 App. D.C. at

9

211–12 (acknowledging disaffirmance where plaintiffs "*gave notice* of their election to disaffirm" (emphasis added)); *MacGreal v. Taylor*, 167 U.S. 688, 694 (1897) ("[W]ithin a reasonable time after reaching full age [the plaintiff] *made and placed upon record* an absolute disclaimer of the alleged contract . . . ." (emphasis added)).

Second, without an explicit allegation of disaffirmance, there is no basis for the court to determine whether Plaintiff disaffirmed within a reasonable time. To the extent that Plaintiff's filing of this lawsuit on August 23, 2021, can be viewed as an attempt at disaffirmance, it comes too late. The filing occurred almost 11 months after Plaintiff turned 18 on September 29, 2020, which is not within a "reasonable time." Am. Compl. ¶ 30; *Gannon*, 42 App. D.C. at 211–12 (finding that approximately 18 days constituted a "reasonable time"). Plaintiff's conclusory assertion in his Prayer for Relief that the contract was "disaffirmed at a reasonable time before [Plaintiff] reached his age of majority"[6] cannot overcome the absence of relevant factual allegations in the complaint. Am. Compl. ¶ A; *Davis*, 968 F. Supp. 2d at 180. The court finds that the Agreement granted a license to UMG and that Plaintiff did not disaffirm the Agreement within a reasonable amount of time after becoming of age. Accordingly, UMG's motion to dismiss for failure to state a claim is granted.

### C.

*Direct Copyright Infringement.* Even independent of the Agreement, Plaintiff has failed to state a claim for direct copyright infringement. Plaintiff asserts that "[e]ach Defendant is strictly

---

[6] Plaintiff includes a slightly different version of this factual allegation in his response to Defendants' motion to dismiss: "To his dissatisfaction, [Plaintiff] disaffirmed his contract with Defendant at this time as Defendant acted in bad faith by not resolving [Plaintiff's] accounting inquiries." Pl.'s Resp. at 5. However, this alternative phrasing, to the extent that it provides any clarification, similarly cannot overcome the absence of relevant factual allegations in the complaint. *See Boyer v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2684 (TSC), 2022 WL 5241848, at *1 (D.D.C. Oct. 6, 2022) ("[I]t is well-settled that a plaintiff cannot remedy pleading defects with new facts stated for the first time in opposition to a motion to dismiss."); *Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F. Supp. 3d 321, 325 n.2 (D.D.C. 2014).

liable for infringement as they worked in concert with each other to reproduce, distribute, display, or license the reproduction, distribution, and/or display of [Plaintiff's] registered works." Am. Compl. ¶ 1. Defendants counter that "Plaintiff has failed to sufficiently plead the elements of direct copyright infringement" because he "offers no facts or details regarding the alleged direct infringement," rendering his "claim . . . entirely conclusory." UMG & Sony Mem. at 9–10; Vydia Mem. at 7.

The court agrees with Defendants. Plaintiff cannot survive a motion to dismiss by "lumping all the defendants together . . . and providing no factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (internal quotation marks omitted); *Estate of Mickens v. U.S. Bank Nat'l Ass'n*, No. 18-cv-928 (KBJ), 2021 WL 3418955, at *4 (D.D.C. Aug. 5, 2021). With the exception of Defendant UMG, Plaintiff mentions the Defendants individually only in the "Parties" section of the complaint, which provides a brief description of the general business of each Defendant but no reference to any individual Defendant's alleged conduct with respect to Plaintiff. Am. Compl. ¶¶ 3–7. The few factual allegations that follow in the complaint refer to Defendants as an undifferentiated group. *Id.* ¶¶ 1, 18–19. Because these allegations "refer to 'Defendants' collectively without specifying which of [the Defendants] allegedly took each action described in the complaint," they are insufficient to maintain a direct infringement claim against Defendants. *Estate of Mickens*, 2021 WL 3418955, at *4. Nor do conclusory statements applied to all Defendants substitute for individualized factual allegations. *Davis*, 968 F. Supp. 2d at 180; *see* Am. Compl. ¶ 1 (listing the elements of a copyright infringement claim and attributing them to "[e]ach Defendant").

Furthermore, even Plaintiff's specific factual allegations against Defendant UMG fail to sufficiently allege a violation. "In the music performance context," direct copyright infringement

requires: "(1) originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright; (3) plaintiff's ownership of the copyright; and (4) defendant's public performance of the compositions." *MOB Music Publ'g*, 698 F. Supp. 2d at 202. Plaintiff has successfully pleaded the first requirement, his "originality and authorship" of *Suger*. Am. Compl. ¶¶ 10–11.

However, Plaintiff falters when he reaches the copyright-related requirements. Although "[c]opyright in a work . . . vests initially in the author or authors of the work," 17 U.S.C. § 201(a), an author must *actually register* the copyright before bringing a lawsuit for copyright infringement. *Buchanan v. Sony Music Ent.*, No. 18-cv-3028 (KBJ), 2020 WL 2735592, at *4–5 (D.D.C. May 26, 2020); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881, 888 (2019) (explicitly finding registration "only when the Copyright Office grants registration," not merely upon submission of application and fee). Here, Plaintiff alleges that "[o]n or about June 18, 2021, the United States Copyright and Trademark Office . . . *received* [his] application to register the creative work for 'Suger.'"[7] Am. Compl. ¶ 35 (emphasis added). Alleging receipt of an application does not allege registration as would be required for Plaintiff's claim to proceed. *Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 888; *Buchanan*, 2020 WL 2735592, at *5 ("The lack of any allegation regarding pre-suit registration . . . compels the conclusion that the . . . infringement claims that relate to [Plaintiff's] unregistered work[] must be dismissed for

---

[7] In his Claims for Relief, Plaintiff rephrases this fact slightly: "On June 18, 2021, the United States Copyright Office accepted an application for copyright registration for the original work, 'Suger' by 2Dirtyy." Am. Compl. ¶ 44. The court interprets this language as having the same meaning. Given that copyright registration processing time, depending on type of application, ranges from an average of 1.2 months to an average of 9.9 months, it appears unlikely that with this minor change in language Plaintiff intended to allege actual registration on the same date that his application was received. *Registration Processing Times*, U.S. COPYRIGHT OFF., https://www.copyright.gov/registration/docs/processing-times-faqs.pdf (last visited Oct. 26, 2022).

failure to state a claim on which relief can be granted."). For these reasons, Plaintiff's direct copyright infringement claim fails against all Defendants.

### D.

*Contributory and Vicarious Copyright Infringement.* Finally, the court addresses Plaintiff's claims for contributory and vicarious copyright infringement against all Defendants. Plaintiff argues that "Defendants' willful infringement has been undertaken knowingly, and with the intent to financially gain," and that "Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement, and they did so with the intent to further their financial interest in the infringement of [Plaintiff's] creative works." Am. Compl. ¶ 46. Defendants counter that Plaintiff's claims are "utterly conclusory and so devoid of specific factual allegations . . . that [they] fail[] to meet even the liberal pleading standards required by [Federal Rule of Civil Procedure] 8." UMG & Sony Mem. at 1, 11–12; Vydia Mem. at 7–8.

Although the acts of contributory and vicarious infringement that Plaintiff alleges constitute two separate claims, the analysis for present purposes overlaps because "in neither case can liability attach absent an underlying act of infringement by a third-party." *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126–27 (D.D.C. 2011); *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (requiring "knowledge" and "substantial participation by the defendant" in "direct infringement *by a third party*" to establish contributory infringement (emphasis added)); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (requiring that a defendant "profit[] from" and "declin[e] to exercise a right to stop or limit" infringement *by a third party* to establish vicarious infringement). Because infringement by a third party is a required element of both the contributory and vicarious infringement claims, Plaintiff must "plead[] [this] element[] with adequate factual support to state a claim to relief that is

plausible on its face" in order to survive a motion to dismiss. *See Sanchez*, 45 F.4th at 395 (internal quotation marks omitted).

Plaintiff here has not identified which third party or parties provide a basis for his claims. Plaintiff comes closest when he states that "Defendants have failed to . . . supervise persons within their control to prevent infringement," but Plaintiff provides no specific factual allegations as to who these "persons" are and how they participated in infringement. Am. Compl. ¶ 46; *Sanchez*, 45 F.4th at 395 (requiring "adequate factual support" for each element of a plaintiff's claim). Plaintiff is, of course, entitled to "all reasonable inferences in [his] favor" in his effort to survive Defendants' motions to dismiss. *Sanchez*, 45 F.4th at 395. But for the court to identify the relevant infringing third party here—and then attempt to determine whether that third party was plausibly responsible for the direct infringement required to support claims of contributory and vicarious infringement—would be pure guesswork.

V.

For the foregoing reasons, Defendants UMG, UMG Publishing, and Sony Music Publishing's motion to dismiss, ECF No. 26, and Defendant Vydia's motion to dismiss, ECF No. 28, are granted.

Dated: November 10, 2022

Amit P. Mehta
United States District Court Judge